UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRANDON CHRISTOPHER BARNES,

                Petitioner,

v.

JAMES KEY,

                Respondent.

CASE NO. 3:21-cv-05777-DGE-JRC

REPORT AND RECOMMENDATION

NOTED FOR: February 18, 2022

The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge J. Richard Creatura. This Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner filed the petition pursuant to 28 U.S.C. § 2254.

A jury convicted petitioner of one count of first-degree rape of a child. Petitioner then filed a personal restraint petition alleging that defense counsel provided ineffective assistance by failing to call potential witnesses to testify in his defense. However, the trial record supported the state courts' determination that defense counsel made a reasonable tactical decision not to call

REPORT AND RECOMMENDATION - 1

the potential witness; doing so would have undermined petitioner's defense. So petitioner failed to show that counsel's performance was deficient and thereby prejudiced his defense. Petitioner's remaining grounds allege procedural errors in his state postconviction proceedings. But state prisoners may not use federal habeas petitions to obtain relief for such alleged errors of state law. Accordingly, petitioner's federal habeas petition should be denied.

## BACKGROUND

### I.  Facts

The Court takes the following factual recitation from the opinion of Division Two of the Court of Appeals of Washington ("Division Two") affirming petitioner's conviction. *State v. Barnes*, 4 Wash. App. 2d 1079 (2018). Because petitioner has not challenged these findings, the Court may rely on them to rule on the petition. *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) (citations omitted).

> From September to December of 2014, four-year-old TV lived with her grandmother, Francesca Heard. Various family members also helped care for TV, including TV's second cousin Sonya Jones and Heard's boyfriend's mother, Darlene Quins. During this time, TV's mother, Keshia, was in the process of relocating to Nevada.
>
> TV also spent time at the home of another second cousin, Tahjiere Smith, who lived with her boyfriend, [petitioner]. In November, Heard went out of town for the weekend and TV spent the weekend with Smith and [petitioner].
>
> Later that week, after Heard had returned, TV told Jones that she was sad because [petitioner] did something to her. TV told Jones that while she stayed with [petitioner] and Smith, [petitioner] called her into his and Smith's bedroom, started to take off her underwear, laid TV on the ground, and touched TV in the vaginal region of her body. TV said that she tried to scream, but [petitioner] covered her mouth with his hand. According to TV, Barnes lay on top of her and moved up and down.
>
> After this disclosure, Jones took TV to Heard, who went with TV into a separate room to talk without Jones present. TV told Heard that [petitioner] took TV into his bedroom, told her to lie down on her stomach, and pulled down her panties, and that [petitioner] laid on top of her. TV also said that she wanted to get up, but

[petitioner] would not let her. Heard asked TV if she was telling the truth and TV said that she was. Heard reported TV's disclosure to the police.

TV later made disclosures regarding the abuse to Keshia and Quins. *Barnes*, 4 Wash. App. 2d 1079, at *1.

## II.     Procedural Background

A jury convicted petitioner of "one count first degree rape of a child." *Id.* at *3. Division Two affirmed petitioner's conviction. *Id.* at * 1. Petitioner sought discretionary review in the Washington Supreme Court. Dkt. 8-1 at 200. The Washington Supreme Court denied this petition. *Id.* at 260.

Petitioner then filed a motion for relief from judgment under CrR 7.8 in the Pierce County Superior Court ("trial court"). *Id.* at 267. Petitioner claimed that his legal counsel was ineffective because he failed to call petitioner's girlfriend and her two children to testify. The trial court determined that the motion was untimely and transferred it to Division Two for consideration as a personal restraint petition. *Id.* at 290. Division Two determined that the personal restraint petition was timely but denied petitioner's claim of ineffective assistance of trial counsel on the merits. *Id.* at 349–51.

Petitioner sought discretionary review in the Washington Supreme Court. *Id.* at 375. In a reasoned order, the Washington Supreme Court commissioner found that Division Two "sustainably denied [petitioner's] personal restraint petition." *Id.* at 462.

Petitioner filed his petition, Dkt. 3, whose timeliness respondent has not disputed. Respondent filed a response, Dkt. 7, along with the state court records, Dkts. 8–15. Petitioner did not reply.

**LEGAL STANDARD UNDER 28 U.S.C. § 2254(d)**

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254 . . . ." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Subject to two exceptions, § 2254(d) bars a state prisoner from obtaining habeas relief on a claim that was adjudicated on the merits in state court. *Id.* at 97–98.

The first exception, § 2254(d)(1), allows habeas relief if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A state court's adjudication is "contrary to" clearly established Supreme Court precedent if the court either: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under § 2254's "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413.

An unreasonable application of federal law differs from an incorrect application of federal law. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted). For the application to be unreasonable, "a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

The second § 2254 exception, § 2254(d)(2), allows habeas relief if the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." "[A] state-court factual

determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Ochoa v. Davis*, 16 F.4th 1314, 1325 (9th Cir. 2021) (citation and internal quotation marks omitted). "Rather, a finding is unreasonable if an appellate court could not reasonably conclude that the finding is supported by the record." *Id.* at 1325–26 (citation and internal quotation marks omitted).

"[T]he relevant state court determination for a habeas petition is the last reasoned state court decision." *Dickens v. Ryan*, 740 F.3d 1302, 1309 (9th Cir. 2014) (en banc). In applying § 2254(d) to the last reasoned state court decision, the Court's "analysis is limited to the facts in the state court record." *See Jones v. Ryan*, 1 F.4th 1179, 1189 (9th Cir. 2021); *see also McDaniels v. Kirkland*, 813 F.3d 770, 780 n.7 (9th Cir. 2015) (en banc).

## DISCUSSION

### I.   Ground I

Petitioner alleges that his trial counsel "provided ineffective assistance by deciding not to call his girlfriend, Tahjiere Smith, and her two children to testify at his trial." Dkt. 7 (citing Dkt. 3 at 5). Petitioner reasons that these potential witnesses would have testified "in his favor for his defense of actual innocence." Dkt. 3 at 5.

Petitioner raised this claim in his petition for review in the Washington Supreme Court. Dkt. 8-1 at 461. He argued that Smith "would have testified that she or her children were always in the presence or sight of the victim . . . and that therefore [petitioner] could not have committed the act alleged without them seeing it." *Id.*

In rejecting this argument, the commissioner noted that, when the prosecutor asked a detective whether Smith had been willing to talk with the detective, defense counsel objected. *Id.* The commissioner further noted that, although the trial court sustained the objection, the trial

court agreed that, if Smith testified, the prosecutor could ask Smith if she had declined to speak with the detective. *Id.* Therefore, the commissioner concluded that "defense counsel could have legitimately declined to call Ms. Smith to testify to avoid an inquiry into her lack of cooperation with law enforcement." *Id.* Furthermore, the commissioner concluded that, because "part of the defense was to question the reliability of a young child's testimony (TV's), counsel could have legitimately declined to call Ms. Smith and [petitioner's] young children to testify." *Id.* The commissioner added that petitioner did "not show with competent evidence what the children's testimony would have been." *Id.*

To establish that counsel provided ineffective assistance, petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, petitioner must show that counsel's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at 688. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To prove prejudice, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is "all the more difficult" to establish ineffective assistance of counsel under § 2254(d). *Richter*, 562 U.S. at 105. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Id.* Rather, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Here, the commissioner concluded that defense counsel had legitimate tactical reasons not to call Smith or her children to testify. The state court record supports its findings. During closing, defense counsel "made a significant effort to undermine the jury's confidence in a key

witness [Sonya Jones] for the State by contending that she was not forthcoming with the police." Dkt. 7 at 11 (citing Dkt. 15 at 241, 252–55). If Smith had testified, the prosecution could have inquired about her lack of cooperation with law enforcement, which would have undermined counsel's attack on Jones' credibility. Furthermore, during closing, defense counsel sought to cast doubt on the child victim's testimony by, among other things, bringing attention to her age and contending that she was coached. *See, e.g.*, Dkt. 15 at 242, 252, 263–64. As respondent correctly states, if "defense counsel had likewise relied on the testimony of children, it would have indicated to the jury that the defense agreed that a child's memory and testimony can be fully trusted, and would have impaired his ability to cast [doubt] on the reliability of the child victim." Dkt. 7 at 11. Therefore, there is a reasonable argument that defense counsel's strategy was not deficient. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .").

Accordingly, the commissioner's rejection of ground one was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts.

**II.    Grounds Two and Three**

In ground two, petitioner alleges that he was denied due process and equal protection when the trial court transferred his motion for relief from judgment under CrR 7.8 ("motion") to Division Two "without setting a show cause hearing to determine why an evidentiary hearing should not have been granted to determine counsel's ineffectiveness." Dkt. 3 at 7. Similarly, in ground three, petitioner alleges that Division Two and the Washington Supreme Court violated due process and equal protection by denying his repeated requests for remand to the trial court to hold an evidentiary hearing on the claim of ineffective assistance alleged in ground one. *Id.* at 8.

Because it is unclear whether petitioner exhausted these grounds, and because they are clearly meritless, the Court reviews them *de novo*. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies . . . ."); 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Grounds two and three allege procedural error in petitioner's state postconviction proceedings. However, "a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings." *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam); *see also Harris v. Miller-Stout*, No. CV-09-0235-CI, 2010 WL 3447232, at *11 (E.D. Wash. Aug. 5, 2010) (rejecting same argument petitioner raises in ground two because it "clearly present[ed] a state procedural claim that [was] not subject to federal habeas relief" (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991))), *report and recommendation adopted*, 2010 WL 3447228 (E.D. Wash. Aug. 31, 2010). Petitioner's couching these claims of state-law procedural error in terms of due process and equal protection does not convert them into a claim of federal error for § 2254 purposes. *See Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (citation omitted).

Broadly construed, ground three also alleges that the state courts' rejection of the claim of ineffective assistance alleged in ground one was unreasonable because no evidentiary hearing was held before that claim was ruled on. However, "[a] state court's decision not to hold an evidentiary hearing does not render its fact-finding process unreasonable so long as the state court could have reasonably concluded that the evidence already adduced was sufficient to resolve the factual question." *Hibbler v. Benedetti*, 693 F.3d 1140, 1147 (9th Cir. 2012) (citation

omitted). Here, the state courts readily could have ruled on petitioner's claim regarding ineffective assistance by reference to the trial transcript. *See supra* pp. 6–7. So any contention that the state courts' fact-finding process was unreasonable is meritless.

In short, grounds two and three lack merit.

### III.     Ground Four

The Court reviews ground four *de novo* for the same reasons that it reviewed grounds two and three *de novo*.

In ground four, petitioner alleges that the state courts denied him due process and equal protection. Dkt. 3 at 10. Petitioner reasons that, in their decisions denying his claim that counsel provided ineffective assistance, these courts relied on a case rejecting a claim of ineffective assistance that was distinguishable. *Id.* (citing *Matter of Lui*, 188 Wash. 2d 525 (2017)). According to petitioner, *Lui* was distinguishable because unlike his case, there were "multiple declarations by counsel for review that proved that counsel was effective." *Id.*

To the extent that this claim alleges that the state courts violated some right under state law to have the state courts rely on applicable caselaw, it fails for the reasons that grounds two and three fail. Likewise, to the extent that this claim alleges that the state courts' factual findings were unreasonable because no evidentiary hearing was held on petitioner's claim of ineffective assistance, the Court rejected this argument in its discussion of grounds two and three. Additionally, to the extent that petitioner contends that the commissioner's decision denying his claim of ineffective assistance violated clearly established federal law, this contention fails for the reasons that ground one fails. *See supra* pp. 5–7; *cf. Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam) ("[A] state court need not even be aware of our precedents, so long as

neither the reasoning nor the result of the state-court decision contradicts them." (citation and internal quotation marks omitted)).

## EVIDENTIARY HEARING

The decision to grant an evidentiary hearing lies within the discretion of the Court. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). The Court "must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474 (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*

Here, the record shows that the commissioner reasonably rejected ground one. Furthermore, the record precludes habeas relief on grounds two, three, and four. Thus, an evidentiary hearing is improper.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only if a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). When a district court rejects a constitutional claim on the merits, to obtain a COA, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 474 (2000). Because petitioner has not so shown, a COA should be denied.

### *IN FORMA PAUPERIS* ("IFP") STATUS ON APPEAL

Petitioner should not be granted IFP status for purposes of an appeal of this matter. IFP status on appeal shall not be granted if the district court certifies "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]" *See* Fed. R. App. P. 24(a)(3)(A). "The good faith requirement is satisfied if the petitioner seeks review of any issue that is not frivolous." *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977) (citation and internal quotation marks omitted). Generally, an issue is not frivolous if it has an "arguable basis either in law or in facts." *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Because any appeal from this matter would be frivolous, IFP status should not be granted for purposes of appeal.

### CONCLUSION

As discussed above, it is recommended that the petition (Dkt. 3) be **denied**. It is further recommended that a certificate of appealability be **denied** and that this case be **closed**.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 18, 2022** as noted in the caption.

Dated this 28th day of January, 2022.

J. Richard Creatura
Chief United States Magistrate Judge